# In the United States Court of Federal Claims

No. 14-817C

(Filed: June 29, 2015)

```
*************************************
                                    *
NORTHERN CALIFORNIA POWER           *
AGENCY, et al.,                     *
                                    *   Rule 12(b)(1) Motion to Dismiss;
              Plaintiffs,           *   Subject Matter Jurisdiction; Rule
                                    *   12(b)(6) Motion to Dismiss; Failure
v.                                  *   to State a Claim Upon Which Relief
                                    *   Can Be Granted; Illegal Exaction
THE UNITED STATES,                  *   Claim; Section 3407(d), Central
                                    *   Valley Project Improvement Act.
              Defendant.            *
                                    *
*************************************
```

*David T. Ralston, Jr.*, with whom were *Jay N. Varon*, *Frank S. Murray*, *Jennifer M. Forde*, and *Anna S. Ross*, Foley & Lardner LLP, Washington, D.C., *Michael F. Dean*, General Counsel, Northern California Power Agency, Sacramento, California, *Barry E. DeWalt*, Assistant City Attorney, City of Redding, *Brita J. Bayless*, City Attorney, City of Roseville, and *Richard E. Nosky, Jr.*, City Attorney, City of Santa Clara, Of Counsel, for Plaintiffs.

*P. Davis Oliver*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

WHEELER, Judge.

Plaintiffs Northern California Power Agency ("NCPA"),[1] and the cities of Redding, Roseville, and Santa Clara, California allege an illegal exaction and seek recovery of payments that they claim were unlawfully assessed and collected by the Bureau of

---

[1] NCPA is a joint powers agency in California comprised of fifteen members including "municipalities, a rural electric cooperative, and other publicly-owned entities interested in the purchase, aggregation, scheduling, and management of electrical energy." Pl.'s Compl. ¶ 12.

Reclamation under Section 3407(d) of the Central Valley Project Improvement Act ("CVPIA"), Pub. L. 102-575, 106 Stat. 4600, 4706-4731. Plaintiffs claim that Reclamation ignores the proportionality mandate in Section 3407(d) of the CVPIA and instead, follows a revenue-maximizing payment scheme that illegally assesses disproportionate payments on Plaintiffs to fund fish and wildlife habitat restoration projects within the Central Valley. On January 20, 2015, counsel for the Government filed a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Government contends that the Court should dismiss Plaintiffs' case because Reclamation acted well within its statutory authority to assess the disproportionate payments on Plaintiffs and thus, there could be no illegal exaction. The motion was fully briefed by May 8, 2015 and the Court heard oral argument on June 17, 2015.

After careful review of the parties' arguments, the Court concludes that the Government's motion is without merit. A mere assertion by the Government that it acted legally under the statute upon which Plaintiffs base their illegal exaction claim does not bar Plaintiffs from their right to have their claim adjudicated by the Court. Section 3407(d) provides a sufficient basis for the Court's jurisdiction over Plaintiffs' claim for an illegal exaction. If the Government violated the proportionality requirement in Section 3407(d), by necessary implication, the remedy would be a return of the illegal and disproportionate payments that it assessed upon Plaintiffs. Plaintiffs also adequately pled a claim for an illegal exaction in their complaint. According to the facts that Plaintiffs present, Reclamation does not consider proportionality as Section 3407(d) requires. Instead, Reclamation relies upon a revenue-maximizing scheme that imposes disproportionate burdens on Plaintiffs, who are required to pay far in excess of what Section 3407(d) allows them to pay to fund the restoration projects in the Central Valley. These facts, if true, give rise to an illegal exaction claim. Accordingly, Defendant's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted is DENIED.

Factual Background

In 1935, Congress created the Central Valley Project to supply water to California farms and communities for agricultural, municipal and industrial uses due to California's scarce water resources. Pl.'s Compl. ¶¶ 2, 4. The Central Valley's need for water is significant – it supplies eight percent of the United States' total agricultural output and one-quarter of the nation's food – but annual rainfall does not provide a reliable source of water for Central Valley farmers. Id.¶ 3. Today, the Central Valley Project is a "network of dams, reservoirs, canals and aqueducts" and is one of the nation's largest federal

reclamation projects, stretching the length of California's Central Valley, from the Cascade Range in the north, to the Kern River in the south. Id. ¶ 1.

The Central Valley Project is managed by the Bureau of Reclamation ("Reclamation") of the United States Department of Interior who oversees approximately nine million acre-feet of water annually. Id. ¶ 4. "An acre-foot of water is approximately 326,000 gallons" of water. Id. Each year, five million acre-feet of water are delivered by the Central Valley Project for agricultural purposes. Another 600,000 acre-feet of water are furnished for municipal and industrial purposes and another 1.2 million acre-feet of water are dedicated to mitigation and restoration purposes such as fish, wildlife, refuges and wetlands. Central Valley water districts and farmers, California municipalities, and other water users ("CVP Water Customers") pay Reclamation for the water they receive. Id. ¶ 5.

The delivery of much needed water to farms, businesses and residents is not the only benefit from the Central Valley Project. The dams built as part of the Central Valley Project allow the production of hydroelectric power. Id. ¶ 6. Reclamation, acting through the Department of Energy Western Area Power Administration ("Western"), sells the hydroelectric power created from the Central Valley Project. Id. Plaintiffs, among others ("CVP Power Customers"), contract with Western to receive the electric power and pay Western for the power they purchase. Id. ¶ 7. In addition to paying for the water and power they receive, CVP Water Customers and CVP Power Customers also pay the Government for the "allocated proportional reimbursable costs of building, operating and maintaining the [Central Valley Project] ('CVP Repayment Costs')." Id. CVP Water Customers pay more than three-fourths of the CVP Repayment Costs while CVP Power Customers pay for less than one quarter. Id. ¶¶ 7, 9-10 (approximately 22-24 percent each fiscal year for CVP Power Customers and more than 75 percent for CVP Water Customers).

In 1992, to offset the environmental impacts from the Central Valley Project, Congress passed the CVPIA. As part of the CVPIA, Congress created a fund designated as the "Restoration Fund" to restore the fish and wildlife habitats within the Central Valley Project. In order to raise money for the Restoration Fund projects, the CVPIA requires CVP Water Customers and CVP Power Customers to contribute payments assessed by Reclamation. Id. ¶¶ 1, 8. The contributions from CVP Water Customers and CVP Power Customers include the additional annual mitigation and restoration payments that are at issue in this case. Id. ¶ 35. Besides the additional annual mitigation and restoration payments, Congress also contemplated four other sources of revenue streams to be deposited into the Restoration Fund: (1) "additional mitigation and restoration charges in connection with renewal of certain long-term water contracts"; (2) revenues realized by Reclamation "as a result of water transfers and the water pricing reforms included in the

3

CVPIA"; (3) "per acre-foot surcharges on [Central Valley Project] water delivered to entities receiving water from the Friant Division of the [Central Valley Project]"; and (4) money donated to the Restoration Fund by non-federal entities. Id. ¶¶ 29-34.

From the five possible sources of revenue streams, Reclamation can collect up to $50 million for the Restoration Fund as appropriated by Congress each year. Id. ¶ 29. However, Reclamation is subject to five limitations when collecting funds. First, the CVPIA mandates that the additional annual mitigation and restoration payments cannot exceed $30 million measured on a three-year rolling average. Second, payments assessed against the CVP Water Customers cannot exceed $6.00 per acre-foot, adjusted for inflation, for agricultural water sold and delivered by the Central Valley Project and $12.00 per acre-foot, adjusted for inflation, for municipal and industrial water sold and delivered by the Central Valley Project. Id. ¶¶ 38-40. Third, Reclamation is required to reduce the additional annual mitigation and restoration payments imposed on Central Valley Project customers who use the water for agricultural purposes by taking into account their ability to pay for such charges. Fourth, Reclamation is required to reduce the annual ceiling for additional annual mitigation and restoration payments to $15 million once it completes the fish, wildlife, and habitation mitigation and restoration actions specified in Section 3406 of the Act. Finally, Reclamation is required to consider proportionality under Section 3407(d): "[t]he amount of the mitigation and restoration payment made by Central Valley Project water and power users, taking into account all funds collected under this title, *shall*, to the greatest degree practicable, be assessed in the same proportion, measured over a ten-year rolling average, as water and power users' respective allocations for repayment of the Central Valley Project." Id. ¶¶ 41-43 (emphasis in original).

Since the inception of the Restoration Fund in 1992, Reclamation has sought to maximize revenue from the additional annual mitigation and restoration payments by seeking to collect the statutory cap of $30 million, adjusted for inflation, from both water and power users. Reclamation does not consider proportionality. See Pl.'s Compl., Ex. 4. (chart). Instead, Reclamation calculates the difference between what it expects to receive from CVP Water Customers and $30 million, and then assesses that difference to Plaintiffs. Since water payments are capped at $6.00 per acre-foot and $12.00 per acre-foot, when water deliveries are low, Reclamation's disregard of the proportionality requirement in the statute leads to a disproportionate burden on Plaintiffs because they are required to make up the difference even if it would exceed their proportion of the CVP Repayment Costs. Id. ¶ 52. Recently, with California in a severe drought and with water deliveries dwindling, Reclamation has required Plaintiffs to pay approximately 40.5 percent of the $30 million Reclamation is allowed to collect from the additional annual mitigation and restoration payments, an increase of approximately 16-20 percent from Plaintiffs' proportion of the CVP Repayment Costs. In 2014, it is estimated that CVP Power Customers will pay up to

60 percent of the total additional annual mitigation and restoration payments, and in 2015, it is estimated they could pay as much as 75 percent of the total. According to Plaintiffs, the disproportional assessment of the Restoration Fund payments has caused CVP Power Customers to pay more than $120 million in excess charges. Id. ¶¶ 10-11. Plaintiffs now seek reimbursement of the $120 million in Restoration Fund payments that they claim were assessed by Reclamation in violation of Section 3407(d)'s proportionality provision.

Analysis

I.  Standards for Decision

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Estes Exp. Lines v. United States, 739 F.3d 689, 692 (Fed. Cir. 2014). The Court's task in considering a jurisdictional challenge is a limited one, and considers not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 120 (2004). The plaintiff has the burden of proof to establish subject matter jurisdiction by a preponderance of the evidence. Estes Exp. Lines, 739 F.3d at 692.

For a Rule 12(b)(6) motion, plaintiffs need only assert "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Granting a motion under Rule 12(b)(6) is "appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle[] him to relief." Fireman v. United States, 44 Fed. Cl. 528, 537 (1999) (quoting Ponder v. United States, 117 F.3d 549, 552-53 (Fed. Cir. 1997)).

II.  The Court Has Jurisdiction Over Plaintiffs' Illegal Exaction Claim.

Under the Tucker Act, the Court can hear any claim that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. It is well established that under the Tucker Act, the Court can hear claims "made for recovery of monies that the government has required to be paid contrary to law." Areolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996) (defining an illegal exaction claim). An illegal exaction claim may be maintained where "the plaintiff has paid money over to the

5

Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." Id. at 1572-73 (internal quotations omitted). Jurisdiction to recover the exaction is provided when "the exaction is based on an asserted statutory power," id. at 1573, and the statute invoked by the plaintiff must provide "either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted,'" Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005).

The Government contends that because Reclamation could legally assess disproportionate additional annual mitigation and restoration payments on Plaintiffs under Section 3407(d), the Court does not have jurisdiction over Plaintiffs' case. See Def.'s Mot. to Dismiss at 13, 19-20 ("[P]laintiffs do not have a right to a proportional assessment; therefore, the statute does not afford them a remedy for the return of monies they were assessed in excess of their proportional share of the CVP repayment."). The Government's contention is incorrect. If all the Government had to do to defeat jurisdiction over an illegal exaction claim was to simply assert that the exaction was legal, this Court's illegal exaction jurisdiction would be nullified. The Court's jurisdiction does not rest on whether the purported exaction was legal. Instead, the Court assumes for the purposes of the motion to dismiss that Reclamation's assessment of the additional annual mitigation and restoration payments was illegal, see Clapp v. United States, 127 Ct. Cl. 505, 509, 117 F. Supp. 576, 578 (1954) ("In the discussion of the question of jurisdiction, we assume that there was no legal authority in the Maritime Administration to demand or receive the $7,500."), and asks what would be the explicit or implicit remedy for the Government's violation of the statute, see Norman, 429 F.3d at 1095. Here, by necessary implication, the remedy would be a return of the payments that were assessed to CVP Power Customers in violation of Section 3407(d)'s proportionality provision.

Even though Section 3407(d) does not contain an express statement that the remedy for violating the statute's proportionality provision is a return of the money paid over to the Government, the lack of express money-mandating language in the statute does not defeat Plaintiffs' illegal exaction claim. See, e.g., Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000) (Court had jurisdiction over an illegal exaction claim based upon the Export Clause of the Constitution because the language of the clause led "to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy."). Otherwise, the Government could assess any fee or payment it wants from a plaintiff acting under the color of a statute that does not expressly require compensation to the plaintiff for wrongful or illegal action by the Government, and the plaintiff would have no recourse for recouping the money overpaid. Overpayment claims are one of the quintessential illegal exaction claims, see, e.g., Suwannee S. S. Co. v. United States, 150 Ct. Cl. 331, 335-37, 279 F.2d 874, 876-77 (1960) (the court held that requiring plaintiff to

pay $20,000 to the Maritime Administration as a condition to be able to transfer two ships to a foreign registry was an illegal exaction), and the Court has always had jurisdiction under the Tucker Act to hear such claims, see Clapp, 127 Ct. Cl. at 513-14, 117 F. Supp. at 580-81 (finding jurisdiction over plaintiff's illegal exaction claim to recover $7,500 paid to the Maritime Administration as a condition for approving the sale of plaintiff's vessel). Plaintiffs clearly meet the Norman standard to have their claims adjudicated by this Court.

### III.  Plaintiffs Properly Stated a Claim for an Illegal Exaction.

Plaintiffs also properly stated a claim for an illegal exaction to survive a motion to dismiss under Rule 12(b)(6).  The facts presented in the complaint allege that Plaintiffs paid money over to Reclamation who acted under the guise of its Section 3407(d) authority to illegally assess disproportionate additional annual mitigation and restoration payments on Plaintiffs.  See Pl.'s Compl., Ex. 3 (invoice from Western to NCPA).  Instead of paying approximately 22-24 percent for the Restoration Fund as is their proportion of the CVP Repayment Costs, Plaintiffs have been charged, on average, approximately 40 percent. Id. ¶ 55.

The Government argues that it is not required to maintain proportionality when it imposes the additional annual mitigation and restoration payments on CVP Power Customers.  According to the Government, the language in Section 3407(d)(2)(A) "to the greatest degree practicable" gives Reclamation complete discretion to ignore the proportionality language in the statute when necessary to collect the full $30 million for the additional annual mitigation and restoration payments as appropriated by Congress each year. Def.'s Mot. to Dismiss at 7-8.  The appropriations acts do not give Reclamation the discretion to deviate from Congress's mandate that Reclamation collect the full $30 million from both water and power users for the additional annual mitigation and restoration payments. Id. at 18-19 ("Congress directs Reclamation 'to assess and collect the *full* amount of the additional and restoration payments authorized by section 3407(d).'") (emphasis added).  Accordingly, because payments are capped for water users at $6.00 and $12.00 per acre-foot, Plaintiffs must make up the difference in order for Reclamation to comply with the annual appropriations acts. Id.

Here, whether Reclamation disregarded the proportionality provision in Section 3407(d) for the additional annual mitigation and restoration payments is an issue of fact. It is entirely plausible under the facts Plaintiffs presented in their complaint that Reclamation violated Section 3407(d) by imposing a revenue-maximizing scheme on Plaintiffs, while ignoring proportionality altogether.  Though the proportionality provision in Section 3407(d) appears to give some flexibility to Reclamation in assessing the payment allocations for water and power users by stating that "all funds collected under this title,

shall, *to the greatest degree practicable*, be assessed in the same proportion, measured over a ten-year rolling average, as water and power users' respective allocations for repayment of the Central Valley Project," this language does not necessarily give a carte blanche to the Government to ignore proportionality altogether. Such a reading of Section 3407(d) would ignore the word "shall" in the provision and render the proportionality limitation a nullity. Sharp Elecs. Corp. v. McHugh, 707 F.3d 1367, 1373 (Fed. Cir. 2013) ("'Shall' is 'mandatory' language."); Sharp v. United States, 580 F.3d 1234, 1238 (Fed. Cir. 2009) ("We therefore reject its interpretation, which would violate the canon that we must 'give effect, if possible, to every clause and word of a statute' and should avoid rendering any of the statutory text meaningless or as mere surplusage.").

The Court notes that it does not make a decision on whether Reclamation's assessment of the additional annual mitigation and restoration payments constituted an illegal exaction under Section 3407(d). All the Court has decided for the purposes of the motion to dismiss is that the facts and Plaintiffs' interpretation of the statute in the complaint are plausible to support their illegal exaction claim. Accordingly, Plaintiffs have properly stated a claim for an illegal exaction in their complaint.

## Conclusion

For the foregoing reasons, the Government's motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is DENIED. Pursuant to Rule 12(a)(4)(A), Defendant shall file its answer to the complaint within 14 days, on or before July 13, 2015.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge